# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Angelberto Contreras and Mayra Rodriguez, | Civ. No. 13-894 (JNE/JJK) |
| Plaintiffs, | |
| v. | |
| Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration System, Inc., and MERSCORP Holdings, Inc., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

Angelberto Contreras and Mayra Rodriguez, *pro se.*

Jared D. Kemper, Esq., Dykema Gossett, PLLC, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

In this action, Plaintiffs Angelberto Contreras and Mayra Rodriguez seek to invalidate the foreclosure of the mortgage on their home.  Plaintiffs assert three claims against Defendants: (1) quiet title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title.  This matter is before the Court on a Motion to Dismiss by Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), Mortgage Electronic Registration System, Inc. ("MERS"), and MERSCORP Holdings, Inc. (collectively, "Defendants").  (Doc. No. 10.)  The matter has been referred to the Magistrate

Judge for Report and Recommendation to the District Court under 28 U.S.C. § 636 and Local Rule 72.1(b).  This Court took the matter under advisement on the papers submitted on August 21, 2013.  (Doc. No. 18.)

For the reasons below, this Court recommends that Defendants' Motion to Dismiss be granted and Plaintiffs' claims be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiffs reside in and are in possession of real property located in Minneapolis, Minnesota.  (Doc. No. 5, Am. Compl. ¶ 1.)  Plaintiffs acquired their interest in the property via warranty deed in 2005.  (*Id.* ¶ 2.)  On June 28, 2007, Plaintiffs executed and delivered a promissory note to Homecomings Financial, LLC.  (*Id.* ¶ 6.)  The promissory note was secured by a mortgage Plaintiffs executed in favor of MERS, as nominee for Homecomings Financial, LLC.  (Am. Compl., Ex. 1.)  The Complaint contains no express allegation that Plaintiffs have defaulted on the promissory note and alleges that Defendants cannot "prove default in accordance with Article 3 of the UCC," but the allegations in the Complaint and documents attached thereto regarding foreclosure proceedings indicate that Plaintiffs defaulted on the note and the property went into foreclosure by 2009.  (*See* Am. Compl. ¶¶ 22, 25–26, Exs. 5–7 (*e.g.*, Notice of Mortgage Foreclosure Sale stating that default on the mortgage has occurred and noting a balance of $154,968.91 of an original loan of $184,000).)

Plaintiffs allege that MERS assigned Plaintiffs' mortgage to Freddie Mac and that Freddie Mac "acquired the mortgage" on November 20, 2007.  (Am.

Compl. ¶¶ 8, 38.)  No assignment to Freddie Mac appears in the public record.
(*Id.* ¶ 16.)

On April 22, 2009, the law firm Shapiro & Zielke ("Shapiro") prepared a
Notice of Pendency of Proceeding to Foreclose Mortgage ("April 2009 NOP") on
behalf of MERS.  (Am. Compl. ¶ 18.)  The April 2009 NOP was executed by
Shapiro attorney Lawrence P. Zielke and was recorded on April 23, 2009.  (Am.
Compl., Ex. 5.)  On April 27, 2009, MERS prepared a Power of Attorney to
Foreclose Mortgage ("April 2009 POA") authorizing Shapiro to foreclose on
Plaintiffs' mortgage.  (Am. Compl. ¶ 19.)  The April 2009 POA was executed by
Jeffrey Stephan as Vice President for MERS and was recorded on May 21, 2009.
(Am. Compl., Ex. 6)  Plaintiffs allege that Stephan was not a Vice President of
MERS and that he is a "known robo-signer."   (Am. Compl. ¶ 19.)  The 2009
foreclosure proceedings ultimately were discontinued.  (*See id.* ¶¶ 18–20.)

On March 30, 2012, MERS assigned Plaintiffs' mortgage to GMAC
Mortgage, LLC ("GMAC").  (Am. Compl. ¶ 20, Ex. 7.)  The assignment was
recorded on April 24, 2012.  (*Id.*)  Varinderjit Kaur, Assistant Secretary of MERS,
executed the assignment of mortgage on behalf of MERS.  (*Id.*)  Plaintiffs allege
that "there is no evidence to indicate that Kaur had the authority to sign
foreclosure documents on MERS' behalf."  (*Id.* ¶ 20.)

On April 16, 2012, GMAC prepared a Notice of Pendency of Proceeding
and Power of Attorney to Foreclose Mortgage ("April 2012 POA") authorizing
Shapiro to foreclose on Plaintiffs' mortgage.  (Am. Compl. ¶ 21, Ex. 8.)  The April

2012 POA was executed by Anthony McLaughlin as Authorized Officer for GMAC and was recorded on April 24, 2012.  (*Id.*)  Plaintiffs allege that "there is no evidence to indicate that McLaughlin had the authority to sign foreclosure documents on GMAC's behalf."  (Am. Compl. ¶ 21.)  Shapiro completed foreclosure by advertisement proceedings and a sheriff's sale was held on September 7, 2012, at which GMAC purchased the property for $161,341.00.  (*See id.* ¶¶ 22–23, Exs. 9–10.)  The Sheriff's Certificate of Sale was recorded in Hennepin County on September 12, 2012.  (*Id.* ¶ 23, Ex. 10.)  Plaintiffs' six-month statutory redemption period expired on March 7, 2013.  (*See id.*)  Plaintiffs did not redeem the property.

On November 30, 2012, GMAC conveyed the Certificate of Sale to Freddie Mac.  (Am. Compl. ¶ 24, Ex. 11.)  The Assignment of Sheriff's Certificate of Sale was executed by Katelyn McCauley as Authorized Officer for GMAC and was recorded on December 10, 2012.  (*Id.*)  Plaintiffs allege that "there is no evidence to indicate that McCauley had the authority to sign foreclosure documents on GMAC's behalf."  (Am. Compl. ¶ 24.)

Plaintiffs commenced this action to invalidate the foreclosure on April 18, 2013.  (Doc. No. 1, Compl.)  Plaintiffs allege that the foreclosure was invalid because: (1) at some point before the foreclosure sale their mortgage was assigned by MERS to Freddie Mac; (2) that assignment was not recorded; and therefore, (3) the foreclosure failed to comply with Minn. Stat. § 580.02(3), "which requires all assignments of a mortgage to be recorded before a party is entitled

4

to make a foreclosure by advertisement . . . ."  *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 59 (Minn. 2013); (*see* Am. Compl. ¶¶ 12–16, 26, 38).  In addition, Plaintiffs contend that the foreclosure was invalid because persons purporting to have legal authority to execute the foreclosure-related documents described above—including the April 27, 2009 Power of Attorney—lacked proper authority to execute the documents.  (Am. Compl. ¶ 18–21, 24, 30, 38.)

## DISCUSSION

### I.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  It must not, however, give effect to conclusory allegations of law.  *Stalley ex rel. United States v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).  The plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ."

*Twombly*, 550 U.S. at 555.  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id.*

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d).  But the court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## II.    Analysis

### A.    Quiet Title

Plaintiffs bring a quiet-title claim to determine adverse claims under Minn. Stat. § 559.01.  Minnesota's quiet-title statute provides that "[a]ny person in possession of real property . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

Plaintiffs assert that it is Defendants' burden to "prove its *[sic]* title to the Mortgage."  (Am. Compl. ¶ 37.)  However, "[i]n order to survive Defendants' motion to dismiss, [Plaintiffs] must plead facts that support [their] quiet title claim sufficient to satisfy federal pleading standards."  *Ko v. Mortg. Elec. Registration Sys.*, Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013) (citing *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548

6

(8th Cir. 2013)).  This requires that a complaint "plead adequate facts to establish a plausible 'claim that the Defendants' adverse claims are invalid.'"  *Gharwal v. Fed. Nat'l Mortg. Ass'n*, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (quoting *Karnatcheva*, 704 F.3d at 548).

### 1. Unclean Hands

Plaintiffs' claim for a determination of adverse claims must be dismissed because Plaintiffs comes to this Court with unclean hands.  In Minnesota, "[a]ctions to quiet title and to determine adverse claims are equitable actions." *E.g.*, *Haubrich*, 2012 WL 3612023, at *3 (citations omitted), *aff'd*, 720 F.3d 979 (8th Cir. 2013).  "A plaintiff who seeks equity must come into court with clean hands." *Id.* (finding dismissal of quiet-title claims warranted based on plaintiffs' default status) (citations omitted).

Plaintiffs defaulted on the mortgage loan years ago by failing to make promised payments, eventually leading to the foreclosure they now challenge after the sheriff's sale of the property and the expiration of the redemption period.  Plaintiffs "seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands." *Stilp v. HSBC Bank USA, N.A.*, No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), *aff'd*, ___F. App'x ___, 2013 WL 5340399 (8th Cir. Sept. 25, 2013); *see also Haubrich*, 2012 WL 3612023, at *3, *aff'd*, 720 F.3d 979 (8th Cir. 2013); *Novak v. JP Morgan Chase Bank, N.A.*, No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), *aff'd*, 518 F. App'x 498 (8th Cir.

2013) ("Plaintiffs now live in the houses without making payment, and they seek to declare their mortgages invalid after defaulting. In short, plaintiffs seek equitable relief from an outcome of their own creation."); *Butler*, 2013 WL 2145701, at *7; *Yang Mee Thao-Xiong v. Am. Mortg. Corp.*, No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013). Thus, Plaintiffs cannot state an equitable quiet-title claim.

### 2. No Pausible Claim that Foreclosure Should be Invalidated

Even if Plaintiffs' quiet-title claim was not barred by Plaintiffs' unclean hands, it should be dismissed because Plaintiffs have no plausible claim that the foreclosure should be invalidated. "To state a quiet-title claim, a plaintiff must state facts sufficient to allow the court to draw the reasonable inference that he or she is in possession of property and that a defendant claims a right or title to the property *but has no such right or title*." *Haubrich v. U.S. Bank Nat'l Ass'n*, No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012) (emphasis added). Here, GMAC was the successful bidder at the sheriff's sale of Plaintiffs' property. And "because [Plaintiffs] did not redeem the property within the six-month period provided by Minnesota law, the sheriff's certificate of sale is 'evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns.'" *Butler v. Fed. Nat. Mortg. Ass'n*, No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *4 (D. Minn. May 15, 2013) (quoting Minn. Stat. § 580.19). Freddie Mac is GMAC's assignee for purposes of title to Plaintiffs' property, having received that property from GMAC. "Therefore, the

8

sheriff's sale and the expiration of the redemption period operates to give [Freddie Mac] title in fee to the property[.]"  *Id.* (citing *Karnatcheva*, 704 F.3d at 548).  As in many similar cases brought in this District, Plaintiffs have come forward with no evidence that this title is invalid.  *See, e.g.*, *id.*  Thus, the Court should dismiss the quiet-title claim.  *See id.*

Moreover, even if Plaintiffs were in a position to now invalidate the foreclosure and to take title to the property from Freddie Mac, they have not set forth a plausible claim that the foreclosure should be invalidated.  Plaintiffs challenge the validity of the foreclosure by asserting that Freddie Mac acquired an unrecorded assignment before the foreclosure proceeding commenced, which rendered the foreclosure invalid under Minnesota law, citing *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 58 (Minn. 2013) (holding that Minnesota's foreclosure-by-advertisement statute requires strict compliance with the requirement that assignments of mortgage be recorded before the foreclosure process begins).  Plaintiffs allege that GMAC had no interest in the property to foreclose because MERS purportedly assigned the mortgage to Freddie Mac prior to initiating foreclosure.  Plaintiffs base these allegations on Freddie Mac's Custodial Agreement and on a screenshot purportedly from Freddie Mac's website.  To begin with, Plaintiffs' theory is implausible and illogical because if MERS had assigned Plaintiffs' mortgage to Freddie Mac before 2012, there would be no reason for GMAC to deed the property to Freddie Mac in 2012.  *See Welk v. Fed. Nat'l Mortg. Ass'n*, No. 12-2864 (SRN/TNL), 2013 WL 2155463, at

9

*3 (D. Minn. May 17, 2013) (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page—and noting "[i]t is no surprise that Fannie Mae is listed as having an interest in October 2012 – Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011").

Further, Plaintiffs' reliance on Freddie Mac's Custodial Agreement to support their assertion of an unrecorded assignment fails.  Plaintiffs argue that the Custodial Agreement shows that MERS must have assigned the mortgage to Freddie Mac prior to foreclosure because of language in the Agreement regarding delivery to Freddie Mac of an assignment "in recordable form but not recorded" under certain circumstances.  (Am. Compl. ¶¶ 9–11.)  But the Custodial Agreement that Plaintiffs reference, as attached to their Complaint (*see* Am. Compl., Ex. 4), appears to be a blank, unexecuted form contract that "has nothing to do with [Plaintiffs'] loan or mortgage[:]  [i]t is not an actual contract; it is an undated and unexecuted form, and none of its blanks are filled in."  *Gharwal*, 2013 WL 4838904, at *5.  Plaintiffs do not explain how the Custodial Agreement has anything to do with their case.  By its terms, the document only requires delivery of an assignment with respect to loans that are a part of a particular Pool Purchase Contract.  But the document does not refer to any Pool Purchase Contract, much less one involving Plaintiffs' loan.  Therefore, the Custodial Agreement fails to support Plaintiffs' claim because it is not for the benefit of any borrower and imposes no obligations as to the borrower.  *See Segura v. Fed.*

10

*Nat'l Mortg. Ass'n*, No. 13-531 (SRN/JJK), 2013 WL 3034096, at *3 (D. Minn. June 17, 2013); *Lara v. Fed. Nat'l Mort. Ass'n*, No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013).  This document does not provide a plausible basis for Plaintiffs' claim that their mortgage was part of a securitization and assigned to Freddie Mac prior to the foreclosure sale.  Plaintiffs' bare allegation that there was an unrecorded assignment of their mortgage to Freddie Mac is not sufficient to state a claim.  *See Gharwal*, 2013 WL 4838904, at *4–5; *Richter v. Fed. Nat'l Mortg. Ass'n*, No. 13-475 (ADM/JJG), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) ("Simply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.").

Similarly, the screenshot of the Freddie Mac website that Plaintiffs attach to their Amended Complaint fails to support their allegation of an unrecorded assignment.  The screenshot states, "Our records show that Freddie Mac is the owner of your mortgage and it was acquired on November 20, 2007."  (Am. Compl., Ex. 2.)  Plaintiff's mortgage provides that MERS, solely as a nominee for Lender, "is the mortgagee under this Security Instrument."  (Am. Compl., Ex. 1 at 4.)  The screenshot therefore directly contradicts Plaintiffs' claim that Freddie Mac was the mortgagee under Plaintiffs' mortgage.  Further, the Minnesota Supreme Court recognized in *Jackson v. Mortgage Electronic Registration Systems, Inc.*, that it is very common for one party to hold legal title to a mortgage on behalf of another party who has "equitable ownership" of the

mortgage, and held that "only assignments of legal title of the security instrument must be recorded in order to commence a foreclosure by advertisement."  770 N.W.2d 487, 501 (Minn. 2009).  Indeed, the screenshot states that the homeowner "may be eligible for [HARP] if your *loan* was acquired by Freddie Mac on or before May 31, 2009," and directs the homeowners as follows: "For help with your *mortgage*, contact your *lender*"; and "*Your lender*, the company to which your make your *mortgage* payments (also referred to as a mortgage servicer) can help you determine if you are eligible for [loan assistance]."  (Am. Compl., Ex. 2 (emphasis added).)  Thus, the screenshot does not allow the Court to draw the reasonable inference that Freddie Mac became the owner of the legal title to Plaintiffs' mortgage in 2007, i.e., the holder of the mortgage deed, as opposed to the owner of Plaintiffs' loan, or that "[MERS] secretly assigned and failed to record a mortgage assignment to Freddie Mac in violation of Minn. Stat. § 580.02(3)."  *See Vollmer v. Fed. Home Loan Mortg. Corp.*, Civ. No. 13-11 (MJD/FLN), 2013 WL 3280254, at *3 (D. Minn. June 26, 2013); *see also Welk*, 2013 WL 2155463, at *3 (rejecting "evidence"—consisting of a screen shot of the MERS loan information page—and noting "[i]t is no surprise that Fannie Mae is listed as having an interest in October 2012 – Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011"); *Anderson v. CitiMortgage, Inc.*, No. 12-230 (ADM/AJB), 2012 WL 3025100, at *4 (D. Minn. July 24, 2012) ("Under Minnesota law, the legal title holder of a mortgage, i.e.

the holder of the mortgage deed, may foreclose on a property by advertisement.").

Plaintiffs also challenge the foreclosure by asserting that individuals who signed assignments, notices of pendency, and powers of attorney lacked legal authority to do so and thus asserts the foreclosure is invalid.  Plaintiffs' allegations as to the April 2009 NOP and the April 2009 POA signed by Jeffrey Stephan are irrelevant and do not support their quiet-title claim, as the 2009 foreclosure proceedings were discontinued and GMAC, not MERS, ultimately foreclosed on Plaintiffs' property.  Plaintiffs' allegations regarding other individuals' alleged lack of authority to sign documents fail—including the March 2012 assignment and April 2012 POA—because they are speculative and implausible.  *See, e.g.*, *Karnatcheva*, 704 F.3d at 548; *Ko*, 2013 WL 3088728, at *2; *Quale v. Aurora Loan Servs., LLC*, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013); *Lara*, 2013 WL 3088728, at *3. Moreover, "even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to [GMAC or Freddie Mac]," not Plaintiffs. *Forseth v. Bank of America, N.A.*, Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013).  As such, Plaintiff lacks standing to pursue this claim.  *See, e.g.*, *id.*; *see also Thao-Ziong v. Am. Mortg. Co.*, No. 13-354 (MJD/TNL), 2013 WL 3788799, at *5 (D. Minn. July 18, 2013) (concluding plaintiff lacks standing to challenge the assignments); *Quale*, 2013 WL 3166584, at *1 (concluding plaintiffs lack standing to make a challenge based

13

on the allegations that an individual lacked authority to execute the assignment of mortgage); *Pope v. Fed. Home Loan Mortg. Corp.*, No. 12-3094 (SRN/JJG), 2013 WL 2251001, at *3 (D. Minn. May 22, 2013) (concluding plaintiffs do not have standing to challenge Ms. China Brown's alleged lack of authority); *Gerlich v. Countrywide Home Loans, Inc.*, No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2–3 (D. Minn. Sept. 7, 2011) (concluding plaintiff lacked standing).

Finally, "[t]o the extent [Plaintiffs] based their claims on the assertions that Defendants had no legal right to declare a default and that Defendants cannot prove a default in accordance with Article 3 of the Uniform Commercial Code, the Court rejects the claims because they are based on the discredited show-me-the-note theory." *Quale*, 2013 WL 3166584, at *1.

Based on all of the above reasons, this Court recommends dismissal of Plaintiffs' quiet-title claim.

### B.    Slander of Title

Plaintiffs assert a slander-of-title claim against Defendants in Count 3.  A slander-of-title claim requires that (1) a defendant made a false statement; (2) then published that false statement to others; (3) defendant maliciously published the statement; and (4) the publication caused plaintiff a pecuniary loss in the form of special damages. *Paidar v. Hughes*, 615 N.W.2d 276, 279–80 (Minn. 2000).  Plaintiffs allege that GMAC drafted and recorded documents in support of the foreclosure that were false because "GMAC is not the real party in

14

interest" and that GMAC and Freddie Mac "knew or should have known that the documents were false." (Am. Compl. ¶¶ 44–45.)

To begin with, this claim fails because it is directed against GMAC, which is not a party to this lawsuit. *See Witthuhn v. Nationstar Mortg., LLC*, Civ. No. 13-680 (JNE/AJB), 2013 WL 3166592, at *1 (D. Minn. June 20, 2013).

With respect to named Defendants, Plaintiffs have not adequately pleaded the elements of a slander-of-title claim, much less met the heightened pleading standard required under Fed. R. Civ. P. 9(b) for such claims. *See Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1032 (8th Cir. 2012) (stating that Rule 9(b) applies to slander-of-title claims). Plaintiffs were required to make specific factual allegations regarding the circumstances of any alleged false statement. *See id.* But Plaintiffs' Complaint is void of any facts from which this Court could infer that Freddie Mac made any false statement or acted with malice. Plaintiffs have also failed to plead any facts indicating that they relied on any alleged misrepresentation. *See Welk*, 850 F. Supp. 2d at 994. Thus, Plaintiffs have failed to state a slander-of-title claim that is plausible on its face, and dismissal is appropriate. *See Lara*, 2013 WL 3088728, at *3; *Pope*, 2013 WL 2251001, at *4; *Haubrich*, 2012 WL 3612023, at *6.

### C. Declaratory Judgment

The basis for the declaratory judgment claim is unclear but it appears to be based on the same allegations as the failed quiet-title claim. Therefore, for the same reasons stated above, the declaratory judgment claim, Count 2, must fail.

*See Lara*, 2013 WL 3088728, at *3.  "A claim for declaratory judgment must be supported by a substantive legal right." *Id.* (citations omitted).  "Having failed to state a substantive claim, the [Complaint] also fails to state a claim for a declaratory judgment." *Id.*

## RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss (Doc. No. 10), be **GRANTED**; and

2.    This case be **DISMISSED WITH PREJUDICE**.


Date: January 23, 2014              *s/ Jeffrey J. Keyes*
                                    JEFFREY J. KEYES
                                    United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 6, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.